**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel.<br>FLOYD CUMMINGS,<br><br>        Petitioner,<br><br>        v.<br><br>DAVE REDNOUR, Warden,<br>Menard Correctional Center,<br><br>        Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 08 C 5723<br>)<br>)   Judge Rebecca R. Pallmeyer<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER

Floyd Cummings was found guilty by a jury of armed robbery and, based on his earlier convictions for armed robbery and murder, was sentenced to natural life imprisonment pursuant to the Illinois Habitual Criminal Act, 720 ILCS 5/33B-1(a), *repealed by* P.A. 95-1052, § 93, eff. July 1, 2009. In his petition for habeas corpus, Cummings argues that he received ineffective assistance from his trial and appellate counsel and that the trial court failed to investigate his allegation of ineffective assistance. Cummings also challenges his life sentence under several theories: He contends the sentence violates the "proportionate penalties" clause of the Illinois Constitution; that it violates the U.S. Constitution; that the state court's refusal to consider his proportionate penalties challenge amounts to a due process violation; and that the Habitual Criminal Act is an unconstitutional *ex post facto* law. For the reasons stated herein, Cummings's petition is denied.

## FACTS[1]

At 10:30 p.m., October 29, 2000, Yashika Jones stepped outside her workplace, a Subway Sandwich Shop at 5300 South Kimbark, Chicago, to smoke a cigarette. While standing outside the Subway, she spoke to Lee Washington, her boyfriend, who was with Cummings. Jones and

---

[1] The court draws this factual history from the Illinois Appellate Court's opinion, *People v. Cummings*, 351 Ill. App. 3d 343, 344, 813 N.E.2d 1004, 1005 (1st Dist. 2004). The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). *See Daniels v. Knight*, 476 F.3d 426, 434 (7th Cir. 2007).

Washington had earlier planned to rob the Subway and invited Cummings to participate. When she returned to work, Jones deliberately left the employee entrance unlocked, and Washington and Cummings entered through that entrance a short time later. One of the men carried a baseball bat.[2] Once inside, Cummings grabbed Johnson by the collar and ordered him to open the petty cash boxes. At the same time, Jones took the money from the cash register. The men attempted to get Johnson to open the floor safe but he was not able to do so.

Cummings found some duct tape in the office and taped Johnson's hands, legs, and eyes. With his eyes taped shut, Johnson heard the sounds of someone destroying television monitors and videocassette recorders in the office, and felt debris fall on him.[3] One of the men struck Johnson, and they succeeded in getting him to turn over his keys. Cummings, Jones, and Washington fled the Subway, went to Cummings's home, and split up the money. Cummings and Washington then returned to the Subway intending to open the floor safe, but left when they saw police at the store and returned to Cummings's home. That evening, when Jones and Washington left the home, they were arrested with proceeds from the robbery. Jones and Washington confessed to police and later pleaded guilty to armed robbery. Jones received a six year sentence; Washington, eight years. Washington led the police to Cummings. Johnson identified Cummings in a lineup, and Cummings subsequently gave a written statement admitting his participation.

A jury convicted Cummings of armed robbery in June 2002. The trial court sentenced Cummings to life under the Illinois Habitual Criminal Act, finding that he had been previously been convicted of murder in Cook County on June 19, 1967 and sentenced to 50 to 75 years, and convicted of an armed robbery in Michigan and sentenced in September 1994 to five to ten years

---

[2] Exactly who had the baseball bat was a matter of dispute at trial. The Subway manager, Johnny Johnson, identified Washington as the man who carried the bat into the Subway, while Washington and Jones claimed that Cummings had the bat.

[3] Again, Cummings and Washington each claim the other was responsible for the destruction of the televisions and VCRs.

imprisonment.

## **PROCEDURAL HISTORY**

On direct appeal, Cummings argued that his sentence violated the proportionate penalties clause of the Illinois Constitution. Cummings compared his armed robbery charge with a charge of armed violence based on robbery with a category III weapon, an offense he alleged contained identical elements.[4] (Pet's Br., Ex. C at 17.) He next argued that the life sentence without the possibility of parole mandated by the Habitual Criminal Act violated the Illinois Constitution because it was manifestly disproportionate to the nature of the offense, his role in the offense, his background and character, and the sentences of his co-defendants. (*Id.* at 24.) Finally, he argued that the trial court erred by failing to conduct a preliminary examination into his post-trial allegation

---

[4] The Illinois Constitution provides both that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship," Ill. Const. Art. I, § 11, and that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. Art. 1, § 2. The Illinois Supreme Court has read these provisions to "mandate penalties which are proportionate to the offenses." *People v. Christy*, 139 Ill. 2d 172, 177, 564 N.E.2d 770, 772 (1990).

"To succeed on a proportionate penalties claim, a defendant must show either that the penalty imposed is cruel, degrading, or so wholly disproportionate to the offense that it shocks the moral sense of the community; or that it differs from the penalty imposed for an offense containing the same elements." *People v. Klepper*, 234 Ill. 2d 337, 348, 917 N.E.2d 381, 386 (2009) (noting that the latter test is known as the "identical elements" test).

The offense of armed robbery, with which Cummings was charged and convicted, is a Class X felony punishable by 6 to 30 years' imprisonment. 720 ILCS 5/18-2(b). Armed robbery occurs when a person "takes property . . . from the person or presence of another by the use of force or by threatening the imminent use of force" and does so while "carr[ying] on or about his or her person or [ ] otherwise armed with a dangerous weapon." 720 ILCS 5/18-2(a)-(b).

The offense of armed violence with a category III weapon, which Cummings argued contained identical elements to armed robbery, is a Class 2 felony, punishable by three to seven years' imprisonment. 720 ILCS 5/33A-3(b). Armed violence with a category III weapon occurs when "[while armed with a dangerous weapon, he commits any felony defined by Illinois Law [except numerous listed exceptions]," and a "dangerous weapon" includes a category III weapon, which is "a bludgeon, black-jack, slungshot, sand-bag, sand-club, metal knuckles, billy, or other dangerous weapon of like character." 720 ILCS 5/33A-1(c)(3); 720 ILCS 5/33A-2(a).

Importantly, armed robbery, as a Class X felony, subjected Cummings to a mandatory life sentence pursuant to the Illinois Habitual Criminal Act, while armed violence, a Class 2 felony, would not have subjected him to that Act.

3

of ineffective assistance of counsel, as required by Illinois law. (*Id.* at 39.)

The appellate court rejected his challenge under the proportionate penalties clause. Such challenges are successful, the court asserted, only in cases where a defendant charged with a lesser offense is subject to the same penalty that would be imposed for a more serious offense. *People v. Cummings*, 351 Ill. App. 3d 343, 347-48, 813 N.E.2d 1004, 1008 (1st Dist. 2004), citing *People v. Christy*, 139 Ill. 2d 172, 564 N.E.2d 770 (1990) and *People v. Lewis*, 175 Ill. 2d 412, 677 N.E.2d 830 (1996). Cummings, in contrast, was charged with the more serious offense. Under those circumstances, the appellate court observed, the prosecution "is not required to proceed on a lesser offense when its evidence is sufficient to support conviction on a greater offense, *i.e.*, armed robbery." *Cummings,* 351 Ill. App. 3d at 347, 813 N.E.2d at 1008. The court then rejected Cummings's challenge to his life sentence, noting that the Habitual Criminal Act had withstood constitutional challenge and that the trial court properly considered Cummings's criminal history: "In determining whether his natural life sentence was proportionate, we must take into account his history as a violent offender. Cummings has no constitutional right to choose the offense with which he will be charged or his penalty. Nor can he erase his violent history." *Id.* at 349, 813 N.E.2d at 1009. Finally, the court rejected Cummings's claims that the trial court did not adequately investigate his *pro se* allegations of ineffective assistance of counsel. The trial court conducted a hearing on that motion and had "read and considered Cummings'[s] motions and the facts of the case." *Id.* at 352, 813 N.E.2d at 1013. Cummings's trial counsel noted that she herself had asserted some of the arguments in Cummings's *pro se* motion, though she declined to acknowledge any ineffectiveness. *Id.* at 352, 813 N.E.2d at 1012. Thereafter, the trial court "gave Cummings the opportunity to argue, explain, and support his allegations," but he declined. *Id.* at 353, 813 N.E.2d at 1013.

On July 12, 2004, Cummings petitioned for a rehearing, arguing that the appellate court did not properly apply Illinois Supreme Court precedents in ruling on his proportionate penalties

4

challenge, and that it was mistaken in considering his status as a habitual criminal offender when deciding that challenge. (Pet. Mot. for Rehearing, Ex. F at 1.) He also argued that the appellate court committed error because it believed the record did not contain the sentencing transcripts of his co-defendants, when it actually did, and that the court misinterpreted his second proportionate penalties claim as a challenge to disparate sentencing when it was actually an argument that the sentence was "cruel, degrading, and disproportionate to the nature of the offense." (*Id.* at 10-11.) The appellate court denied his petition for rehearing on August 2, 2004.

Cummings next petitioned for leave to appeal ("PLA") to the Illinois Supreme Court. He argued in his PLA that the appellate court erred in holding that the penalty for armed robbery did not violate the Illinois Constitution's proportionate penalties clause when compared with the penalty for armed violence predicated upon robbery with a category III weapon. (Pet. for Leave to Appeal, Ex. G at 2.) He also argued that the appellate court erred in holding "that the trial court adequately examined the allegations of ineffective assistance of counsel in Floyd Cummings' post-trial *pro se* motions." (*Id.*) On July 24, 2004, the Illinois Supreme Court denied the PLA.

Having exhausted his direct appeals, Cummings filed a petition for post-conviction relief in the Circuit Court of Cook County on March 15, 2005. In that petition, he argued, first, that his murder conviction should not have been considered in sentencing him under the state's Habitual Criminal Act because it occurred in 1967, during a period when the Act had been repealed. (Post-Conviction Pet. at 2.) Cummings argued that the statute includes language that bars consideration of his 1967 conviction from consideration, and that the statute otherwise failed to give him fair notice of the potential penalties of his conduct. (*Id.* at 3-6.) Cummings further argued that the Habitual Criminal Act amounts to an unconstitutional *ex post facto* law. (*Id.* at 11.) Finally, Cummings argued that the court erred in imposing a life sentence because such a sentence was not mandatory. (*Id.* at 7-8.)

On April 15, 2005, the Circuit Court of Cook County dismissed Cummings's petition. (Order,

Ex. K at 5.)  The court rejected Cummings's argument that the statute did not apply to pre-1978 convictions, because "upon a careful reading of the Habitual Criminal Act, it is immediately apparent that petitioner is mistaken" in that the Act requires only that the third offense be committed after 1978.  (*Id.* at 4.)  The court next overruled his fair notice objection, remarking that "[t]he court sincerely hopes that petitioner is not suggesting that, due to some negligence on the part of the legislature, he was unaware that armed robbery and murder are prohibited by law." (*Id.* at 4-5.)  Finally, the court rejected Cummings's claim that his life sentence was not mandatory, finding that it was "the only sentence permitted by law." (*Id.*)

On May 5, 2005, Cummings moved for reconsideration of the denial of his post-conviction petition. In this *pro se* petition, he raised several new arguments, including a challenge to his life sentence as cruel and unusual punishment, and the ineffectiveness of his trial and appellate counsel.  (Mot. for Reconsideration, Ex. L.)  The circuit court denied that motion, and Cummings then appealed to the Illinois Appellate Court, but the court affirmed in a June 25, 2007 opinion. Cummings sought rehearing; the appellate court denied that petition, but withdrew its June 25 opinion, and issued a revised opinion on August 25, 2007.  *People v. Cummings*, 375 Ill. App. 3d 513, 514-16, 873 N.E.2d 996, 999-1000 (1st Dist. 2007).  The court held that Cummings's challenge to his sentence under the proportionate penalties clause of the Illinois Constitution was barred by *res judicata* because it was considered and decided on direct appeal.  *Id.* at 517-20, 873 N.E.2d at 1001-03. The court observed, further, that Cummings's argument failed on the merits because he

> does not dispute our holding in his direct appeal that the State was not required to proceed on the lesser offense of armed violence predicated on robbery with a category III weapon when its evidence was sufficient to support conviction on the greater offense of armed robbery. . . . [D]efendant was not sentenced for his armed robbery conviction.  Rather, once defendant was found guilty of his third Class X offense, in this case armed robbery, the trial court was without discretion and was required to adjudge him an habitual criminal and give him a mandatory life sentence pursuant to the Habitual Criminal Act.

6

*Id.* at 521-22, 873 N.E.2d at 1004. On August 31, 2007, Cummings filed a petition for leave to appeal to the Illinois Supreme Court, which was denied on November 29, 2007. Cummings sought reconsideration of that ruling, arguing in a December 20, 2007 motion that the Court should take the case because "it has yet to determine how to remedy a disproportionality that *results* in the application of the Habitual Criminal Act." (Mot. to Reconsider, Ex. S at 4.) The Supreme Court denied the motion on December 26, 2007.

On October 7, 2008, Cummings filed this petition pursuant to 28 U.S.C. § 2254.

## **DISCUSSION**

Cummings does not specify what claims he is raising in his petition, instead noting that "All Issues are properly reserved." (Pet. for Habeas Corpus at 6.) This court earlier ruled that it would construe his petition as raising all issues presented in one full round of state-court review proceedings. (Minute Order [9].) Those issues are: (1) whether Cummings's sentence for armed robbery violated the Illinois Constitution's proportionate penalties provision and (2) whether the trial court adequately investigated his allegation of ineffective assistance of counsel. Cummings has also raised additional issues that, liberally construed, state federal claims, although, as explained below, all are procedurally defaulted: he challenges his life sentence as cruel and unusual punishment; he argues that he received ineffective assistance of trial and appellate counsel; he contends that the failure of the state courts to address his proportionate penalties challenge amounts to a due process violation; and, finally, he argues that the habitual criminal offender statute under which he was sentenced is an unconstitutional *ex post facto* law.

This court will grant a writ of habeas corpus only when the state court decision in question was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *Virsnieks v. Smith*, 521 F.3d 707, 713 (7th Cir. 2008). Further, before

this court will consider his claims, the petitioner is required to "exhaust[ ] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). "In order to satisfy this requirement, a petitioner must fairly present his federal claims at each level of the state's established review process. . . . Failure to do so constitutes procedural default that precludes review by federal courts." *Johnson v. Pollard*, 559 F.3d 746, 751-52 (7th Cir.2009) (citations omitted). "Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). A federal habeas petitioner "may raise a federal claim which has been procedurally defaulted [only] if he can demonstrate adequate *cause* to excuse his failure to raise the claim in state court and actual *prejudice* resulting from the default." *Farrell v. Lane*, 939 F.2d 409, 411 (7th Cir.1991).

The procedural default doctrine not only requires a petitioner to give the state courts a full opportunity to address his claims. In addition, that doctrine "precludes federal review of a state court's habeas decision when the state court's decision was based on adequate and independent state law [grounds]." *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010). Whether a constitutional issue has been fairly presented turns on four factors: "'1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases that apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." In applying this test, the court will construe *pro se* petitions liberally. *Ward*, 613 F.3d at 696-97 (quoting *Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001)) (citation omitted).

**I.     Proportionate Penalties Challenge**

Cummings did properly present his claim that his sentence for armed robbery violated the proportionate penalties clause of the Illinois Constitution in an entire round of state court review.

8

On habeas review, however, this court is not free to second-guess a state's interpretation of its own constitution. Instead, this court's analysis is limited to determining whether a conviction was "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A claim such as this one, which is based on the Illinois Constitution, is not cognizable in a federal habeas proceeding. *United States ex rel. Bruce v. McCann*, 598 F. Supp.2d 890, 899 (N.D. Ill. 2009) (declining to review a proportionate-penalties clause challenge to life sentence).

This court notes that there does appear to be disagreement in the Illinois courts on the issue that Cummings has raised.[5] As the Seventh Circuit has noted when reviewing a similar challenge, "[Petitioner's] case is difficult because. . . the Illinois disposition does appear to conflict with the Illinois Supreme Court's decision in [*People v. Christy*, 139 Ill. 2d 172, 564 N.E.2d 770 (1990)]. Nonetheless, if the law has evolved in such a manner that, if his case were re-tried today, the outcome would be different, this is the responsibility of the Illinois courts and the executive authority of that state, not of the federal courts." *Bloyer v. Peters*, 5 F.3d 1093, 1100 (7th Cir. 1993).

---

[5] In fact, several Illinois courts have explicitly disagreed with the Illinois Appellate Court's opinion in this case. In a more recent opinion in this case, the court acknowledged the disagreement, but noted that it is not bound by the holdings of appellate courts in different districts. *See People v. Cummings*, 375 Ill. App. 3d 513, 519-20, 873 N.E.2d 996, 1003 (1st Dist. 2007) ("[O]nly our supreme court may reverse or overrule a decision of the appellate court, and decisions of intermediate appellate courts are the law of the state or jurisdiction until such decisions are reversed or overruled by the court of last resort."). The Illinois Appellate Court for the Second District disagreed with the State's characterization of *Cummings*, noting that "[a] proportionate penalties challenge based on the identical elements test is not limited to comparing offenses with which a defendant is charged." *People v. Andrews*, 364 Ill. App. 3d 253, 276, 845 N.E.2d 974, 994 (2d Dist. 2006). Several courts in the First District have also taken issue with the 2005 *Cummings* opinion. *See People v. Hampton*, 363 Ill. App. 3d 293, 307, 842 N.E.2d 1124, 1136 (1st Dist. 2005) ("We agree with the holding in *Cummings* that the State need not proceed on a lesser offense when there is sufficient evidence to convict on a greater offense. But we do not agree that the constitutional prohibition against disproportionate penalties for identical crimes may be relaxed where the State decides to proceed only with the crime carrying a greater penalty."); *People v. Harvey,* 366 Ill. App. 3d 119, 127, 851 N.E.2d 182, 190 (1st Dist. 2006) ("[W]e find the reasoning[] employed by the court[] in *Cummings* . . . to be faulty and unpersuasive here given that [it] rel[ies] on the [*People v. Lewis*, 175 Ill. 2d 412, 677 N.E.2d 830 (1996)] court's finding that armed violence predicated on robbery ceased to exist once the court found that its corresponding sentence was unconstitutionally disproportionate to the sentence for armed robbery.").

## II. Cruel and Unusual Punishment Challenge

Cummings appeared to style a challenge to his life sentence as a federal claim in his petition for rehearing to the Illinois Appellate Court (Pet. for Rehearing, Ex. F at 10), arguing that his sentence was "cruel, degrading, and disproportionate to the nature of the offense." (*Id.* at 10-11.) This claim is defaulted because it was not explicitly raised aside from this single petition, and Cummings has suggested no cause and prejudice that would excuse for this default. The court notes, however, that it, too, fails on the merits. "[T]he Supreme Court has rejected Eighth Amendment challenges to statutorily mandated life sentences for defendants with two prior felony convictions." *United States v. Strahan*, 565 F.3d 1047, 1052 (7th Cir. 2009) (citing *Ewing v. California*, 538 U.S. 11, 25 (2003) (upholding California's three-strikes law)). *See also United States v. Cannon*, 429 F.3d 1158, 1161 (7th Cir. 2005) ("Mandatory recidivist enhancements are compatible with the eighth amendment."); *Williams v. Chrans*, 894 F.2d 928, 936 (7th Cir. 1990) ("The Illinois legislature could rationally conclude that a person who has committed three crimes of violence against another person has demonstrated either an unwillingness or an inability to reform. Consequently, we cannot say that the Illinois Habitual Criminal Statute results in a sentence 'grossly disproportionate to the severity of' Williams' crime [of three armed robberies].").

## III. Claim of Ineffective Assistance of Counsel

Cummings has made three arguments related to ineffective assistance of counsel. The only argument that is clearly not procedurally defaulted is that the trial court failed to adequately investigate Cummings's allegation of ineffective assistance of trial counsel in his *pro se* post-trial motion. Cummings also made arguments regarding the ineffective assistance of trial and appellate counsel in his motion for reconsideration of the denial of his post-conviction petition (Mot. for Reconsideration at 10-13.), but did not previously raise or later revive those arguments. The court nevertheless addresses each of these arguments briefly.

### A. Adequacy of the Trial Court's Inquiry

Cummings contends that the trial court failed adequately to investigate his claim of ineffective assistance of counsel. The court agrees with Respondent's characterization (Resp. to Pet. for Habeas Corpus at 13-15.) of this challenge as one based on the common law rule established by the Illinois Supreme Court. "The law requires the trial court to conduct some type of inquiry into the underlying factual basis, if any, of a defendant's *pro se* posttrial claim of ineffective assistance of counsel." *People v. Moore*, 207 Ill. 2d 68, 79, 797 N.E.2d 631, 638 (Ill. 2003) (remanding a case to the trial court because "[t]he trial court conducted no inquiry of any sort into defendant's allegations of ineffective assistance of counsel").

On direct appeal, Cummings clearly framed the issue as a challenge to the trial court's compliance with this state law standard. He asserted that "[w]here the trial court erred by failing to conduct a preliminary examination into Floyd's post-trial motions alleging ineffective assistance of counsel as required under Illinois law, this court should remand for a hearing on whether Floyd's counsel was ineffective." (Pet.'s Br. at 39.) The appellate court rejected this challenge on the merits, noting that "[t]he trial court read and considered Cummings' motions and the facts of the case. . . . Under the circumstances, we believe the trial court adequately examined the basis of Cummings' allegations before denying his motion." *Cummings*, 351 Ill. App. 3d at 352-53, 813 N.E.2d at 1013.

In his petition for leave to appeal to the Illinois Supreme Court, Cummings argued that "[t]his Court should also grant leave to appeal because the appellate court erroneously found that the trial court adequately examined the allegations of ineffective assistance of counsel in Floyd Cummings' post-trial *pro se* motions. Pursuant to this Court's precedent in *People v. Moore*, the trial court has a duty to examine claims of ineffective assistance of counsel at a post-trial hearing." (Pet. for Leave to Appeal at 2.)

The only fair reading of this objection to the trial court's procedure is that Cummings contended that the trial court failed to comply with state law. A federal court is precluded from

11

reaching such a claim. "[E]ven if the holding in [*People v. Krankel,* 102 Ill. 2d 181, 464 N.E.2d 1045 (1984), a predecessor to *Moore*] did apply in this case, [Petitioner] alleges that his trial court's behavior violated Illinois state law, not federal law. . . . Because [Petitioner] does not allege any violation of federal law as determined by the Supreme Court, and no Supreme Court precedent mandates the inquiry sought by [Petitioner], this Court may not grant the writ of habeas corpus over [Petitioner's] judicial inquiry claim." *Dolis v. Gilson*, No. 07 C 1816, 2009 WL 5166228, at * 13 (N.D. Ill. Dec. 23, 2009). This court must dismiss Petitioner's claim arising from the purported inadequacy of the trial court's examination of the ineffective assistance issue.

### B. Ineffective Assistance of Trial Counsel

Cummings did not make any argument regarding counsel in his post-conviction petition. In his motion for reconsideration of the denial of that petition, however, Cummings did restyle his ineffective assistance argument. (Mot. for Reconsideration at 10.) Thus, Cummings argued that trial counsel was ineffective in failing to challenge his eligibility for sentencing as a habitual offender. (*Id.*) Cummings claims he did not understand, at the time of his (earlier) guilty plea, that he faced a potential life sentence as a habitual offender. (*Id.*)

Cummings did not argue ineffective assistance of counsel in his appeal from the denial of the post-conviction petition to the Illinois Appellate Court, and did not present such an argument in his petition for leave to appeal the denial of his post-conviction petition to the Illinois Supreme Court. Nor was there any mention of this argument in Cummings's motion for leave to seek reconsideration of the denial of his petition for leave to appeal to the Illinois Supreme Court. In his petition to this court, Cummings lists, as one of his "post-conviction issues," the claim that his "trial counsel was ineffective for failing to object to defendant's eligibility to be sentence[d] as an habitual criminal and that [appellate] counsel was ineffective for failing to raise trial counsel's ineffectiveness on direct appeal." (Pet. for Habeas Corpus at 5.) He nevertheless does not identify ineffective assistance of trial counsel as a specific claim for this court's consideration.

12

It appears from this court's review of the record that the first time Cummings presented an ineffective assistance argument related to sentencing was in the motion for reconsideration of the denial of his post-conviction petition. (Mot. For Reconsideration at 10, 12.) In that motion, Cummings argued that trial counsel was ineffective for failing to contest his eligibility for sentencing as a habitual offender and failing to inform him that he could be sentenced as a habitual offender as a consequence of a guilty plea.[6] (Mot. for Reconsideration at 10, 12.) This claim is procedurally defaulted. Cummings appears to argue that he has cause to excuse the default in that his appellate counsel refused to raise the issue. Cummings could, however, have raised the claim in his post-conviction petition, but did not.

In any event, this claim, too, fails on its merits. To prevail on a claim of ineffective assistance of trial counsel, Cummings must show that his trial counsel's performance was deficient, and that prejudice resulted from that deficiency. *Brown v. Finnan*, 598 F.3d 416, 422 (7th Cir. 2010). Such deficiency is demonstrated when petitioner can show "counsel's representation fell below an objective standard of reasonableness." *Id.* (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)). Nothing in the record supports Cummings's argument that his representation fell below an objective standard of reasonableness. In fact, the record refutes the allegations he made regarding ineffective assistance. When Cummings complained about his initial representation by the public defender, counsel from outside the public defender's office was appointed for him. (Rep. of Proceedings, Ex. U at 36, F-9.) His appointed counsel filed and argued motions to bar the application of the habitual criminal statute in Cummings case, and to have it declared

---

[6] Cummings did not plead guilty in this case. He may be arguing that he received ineffective assistance of counsel during proceedings for his previous murder and armed robbery convictions. Any such claim would fail because previous counsel could not have notified or warned him of the habitual offender penalties that were either not in place at the time or did not then apply to him. *See, e.g., Douglas v. Clark*, 991 F.2d 799, 1993 WL 122635, at *2 (7th Cir. 1993) ("The Due Process Clause, which provides the sole guarantee to notice of state criminal proceedings, requires only that defendants receive adequate time to prepare a defense to an habitual offender enhancement.").

13

unconstitutional. (*Id.* at 56, M-3.)

As for the contention that Cummings was unaware of the potential consequences of his guilty plea, such an argument clearly fails. Cummings acknowledged in a pre-trial hearing on October 29, 2001, that "I am facing a life sentence." (Rep. of Proceedings, Ex. U at 30, F-3.) That is the very reason that the trial court judge appointed counsel when he complained about the public defender. He did not plead guilty, but went to trial on these charges, and at the time he did so the record demonstrates he knew that a guilty verdict would carry with it a mandatory life sentence.

### C.     Ineffective Assistance of Appellate Counsel

Cummings also argues that appellate counsel was ineffective in failing, on direct appeal, to raise the claim of ineffective assistance of trial counsel. (Pet. for Habeas Corpus at 5.) He did present such a claim in his motion to reconsider the denial of his post-conviction petition, urging in that motion that his appellate counsel was ineffective in refusing to argue ineffective assistance of trial counsel. (Mot. for Reconsideration at 12.) Cummings did not, however, raise this issue in his post-conviction petition or at any other stage of state court review. This claim too is therefore procedurally defaulted.

In addition, as noted above, there appears to be no basis for a claim of ineffective assistance of trial counsel. The failure of appellate counsel to make such an argument thus cannot be the basis of an ineffective assistance claim. "Appellate counsel's performance is similarly measured against that of an objectively reasonable attorney. . . . An appellate counsel's performance is deficient if she fails to argue an issue that is both obvious and clearly stronger than the issues raised. . . . However, counsel is not required to raise every nonfrivolous issue on appeal." *Brown*, 598 F.3d at 425 (citations omitted). Failure to make this argument could not have prejudiced Cummings. Put another way, absent any colorable claim of ineffective assistance of trial counsel, appellate counsel behaved reasonably in not pursuing that claim on direct appeal.

### IV.    Due Process Violation

14

Cummings appears, for the first time, to present a federal due process claim in his motion for leave to seek reconsideration of the denial of his PLA. (Ex. S ¶ 5.) Specifically, he argued in that motion that the appellate court's refusal to engage in a proportionate penalties analysis violates due process. Cummings cited *Fetterly v. Paskett*, 997 F.2d 1295 (9th Cir. 1993), for the proposition that the "[f]ailure of a state to abide by its own statutory commands may implicate a liberty interest protected by the Fourteenth Amendment against arbitrary deprivation by a state." *Id.* at 1300.

For purposes of this analysis, the court will assume that Cummings's argument might be excused from procedural default to the extent that he contends that the state has, for arbitrary reasons, completely ignored its responsibility to comply with its own statutory sentencing scheme. Such a claim would, arguably, not ripen until the petitioner presented the state statutory claim at every level of state review (as Cummings has done here with his proportionate penalties challenge) and the state courts continued to refuse consideration of such a challenge.

Even if this claim were excused, however, it too would fail on the merits. First of all, the *Fetterly* case cited by Cummings differs from his situation in that it was a death penalty case. The *Fetterly* court cited the Supreme Court for the proposition that, "where a state has provided a specific method for the determination of whether the death penalty shall be imposed, 'it is not correct to say that the defendant's interest' in having that method adhered to 'is merely a matter of state procedural law.'" *Fetterly*, 997 F.2d at 1300 (quoting *Hicks v. Oklahoma*, 447 U.S. 343, 346 (1980)). The court went on to note that, "[t]he very purpose of statutes such as Idaho Code § 19-2515(c) is to comply with the exacting requirements of the Constitution of the United States as articulated by the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L.Ed.2d 346 (1972) and its progeny." *Fetterly*, 997 F.2d at 1300.

Assumed that a state court's refusal to address a colorable argument might in some circumstances violate due process, such a due process challenge would be unsuccessful in this case. The Illinois courts did explicitly consider and rule on Cummings's proportionate penalties

15

challenge on direct appeal, after his motion to reconsider the direct appeal, in his post-conviction petition, and in his appeal from the denial of his post-conviction petition. Cummings certainly is free to disagree with the analysis; but the courts' repeated consideration is a far cry from the type of "arbitrary deprivation" that would present a potential due process violation under these circumstances.

## V.     *Ex Post Facto* Violations

Cummings first raised several challenges related to the habitual offender statute in his post-conviction petition, arguing that it amounted to an *ex post facto* law, that the legislature did not intend it to be retroactive, and that Cummings did not receive fair notice of the potential penalties he could face under the Illinois Habitual Criminal Act. Though he raised these in his post-conviction petition, he did not revive these arguments on appeal from the dismissal of that petition, and those claims are therefore procedurally defaulted. Again, however, for completeness the court notes that these claims, too, lack merit.

The trial court specifically addressed these claims in denying Cummings's post-conviction petition. The court first rejected Cummings's reading of the statute as prohibiting consideration of a pre-1978 conviction, noting that it requires only that the third offense be committed after the effective date of the act. (Order, Ex. K at 3.) Next, as described earlier, the court rejected the argument that Cummings was not given fair notice of the consequences of his actions. A court in this district has explained why the fair notice argument lacks merit: "The Illinois Habitual Criminal Act in its current form has been on the books in Illinois since 1980. . . . [Petitioner] could not be surprised by a law that had been in effect for thirteen years at the time of his crime." *United States ex rel. McDonald v. Page*, 108 F. Supp.2d 993, 1007-08 (N.D. Ill. 2000).

As the Illinois Supreme Court explained when upholding this habitual criminal scheme against *ex post facto* and double jeopardy challenges,

[t]he United States Supreme Court and our court have repeatedly recognized. . . that

16

> habitual criminal statutes do not define a new or independent criminal offense. . . . Rather, such statutes simply prescribe the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions. The punishment imposed under the Act is for the most recent offense only. The penalty is made heavier because the person convicted is a habitual criminal. The Act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent felony offense. Instead, they simply aggravate or enhance the penalty imposed for the third and most recent offense.

*People v. Dunigan*, 165 Ill. 2d 235, 242, 650 N.E.2d 1026, 1029 (Ill. 1995). *See also Williams*, 894 F.2d at 936 ("[Petitioner's] challenges to the statute on ex post facto grounds . . . ha[ve] been firmly rejected by both state and federal courts.").

## **CONCLUSION**

For the aforementioned reasons, Cummings's petition for habeas corpus [8] is denied.

ENTER:

Dated: October 22, 2010

_____
REBECCA R. PALLMEYER
United States District Judge